UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

***

| | |
|---|---|
| MICHAEL PHELPS, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>MC COMMUNICATIONS, INC., JOHN WEHRMAN and ROBERT HAYES,<br><br>Defendants. | 2:11-cv-00423-PMP-VCF<br><br>**ORDER**<br><br>[Motion To Find Defendants in Violation of Order #63, Motion To Compel Proper Discovery Responses #64, Motion To Compel Production of Documents and Modify Discovery Schedule #65, and Motion To Compel Defendants to Answer at a Deposition Questions Relating to Certain Attorney-Client Communications #66] |

Before the Court is Plaintiff's Motion To Find Defendants in Violation of Order. (#63). Defendants Robert Hayes, MC Communications, Inc., and John Wehrman filed an Opposition (#70), and plaintiff filed a Reply (#83).

Also before the court is defendants' Motion To Compel Proper Discovery Responses. (#64). Plaintiff filed an Opposition (#81), and defendants filed a Reply (#87).

Also before the court is plaintiff's Motion To Compel Production of Documents and Modify Discovery Schedule. (#65). Defendants filed an Opposition (#80), and plaintiff filed a Reply (#85).

Also before the court is plaintiff's Motion To Compel Defendants to Answer at a Deposition Questions Relating to Certain Attorney-Client Communications. (#66). Defendants filed an Opposition (#79), and plaintiff filed a Reply (#86). The court held a hearing on July 18, 2013. (#90).

**A. Background**

Plaintiff filed his complaint in the Eighth Judicial District Court, Clark County, Nevada on February 11, 2011. (#7-2). Plaintiff sought the following forms of relief: (1) unpaid overtime wages

pursuant to the Fair Labor Standards Act ("FLSA"); (2) compensation for overtime pursuant to Nevada Revised Statute 608.018; and (3) failure to pay wages upon separation pursuant to NRS 608.040.  *Id.* On March 21, 2011, defendants removed the action to this court based on federal question pursuant to 28 U.S.C. § 1331. (#1).  On April 4, 2011, defendants filed a motion to dismiss or stay in favor of pending prior litigation. (#11).

On April 8, 2011, plaintiff filed a motion to remand to state court.  (#14).  On May 16, 2011, defendants filed a notice of partial withdrawal without prejudice of the motion to dismiss or stay (#11). (#21).  On August 1, 2011, the court entered an order (1) denying the motion to dismiss (#11) as moot without prejudice to renew following remand to state court; (2) granting the motion to sever (#13) and the motion to remand to state court (#14); (3) denying the motion to file a supplement of new authority (#30) as moot; and granting the motion for circulation (#12).  (#35).  The court declined to exercise supplemental jurisdiction over the state law claims.  *Id.*  The only claim remaining before this court is the FLSA claim.  *Id.*

On August 18, 2011, defendants filed an answer.  (#36).  On September 8, 2011, the parties filed a stipulation to stay the case (#42), which the court signed (#43).  On October 31, 2012, defendants filed a motion to lift the stay (#51), which the court granted (#52).  Per court order (#54), the parties submitted their proposed discovery plan/scheduling order on December 13, 2012.  (#55).  On December 18, 2012, the court entered the scheduling order, in which the expert designation date was scheduled for February 18, 2013 and completion of discovery was scheduled for April 18, 2013.  (#56).  On February 15, 2013, plaintiffs filed a motion to compel production of documents and modify the discovery schedule.  (#58).  On March 5, 2013, defendants filed an opposition to the motion to compel (#58). (#61).  On March 15, 2013, plaintiffs filed a reply to the defendants' opposition (#61).  (#62).

On April 3, 2013, plaintiff filed a motion to find defendants in violation of this court's order (#35).  (#63).  On April 17, 2013, defendants filed a motion to compel proper discovery responses (#64),

and on April 18, 2013, plaintiff filed a motion to compel production of documents and modify discovery schedule (#65) and a motion to compel defendants to answer at a deposition questions relating to certain attorney-client communications (#66).  On April 19, 2013, the court issued an order granting in part and denying in part the motion to compel production of documents (#58).  (#67).  On April 22, 2013, the parties filed a stipulation for extension of time regarding plaintiff's motion (#63).  (#68).  The court signed the stipulation on the same day.  (#69).  On April 26, 2013, defendants filed an opposition to the plaintiff's motion (#63).  (#70).

The parties filed several stipulations for extensions of time regarding responding to pending motions (#71, #72, #73, and #74), which the court signed (#75, #76, #77, and #78).  On May 20, 2013, defendants filed oppositions (#79 and #80) to plaintiff's motions to compel, and plaintiff filed an opposition (#81) to defendants' motion to compel and a reply in support of his motion to find defendants' in violation (#83).  On May 29, 2013, the court issued a minute order scheduling a hearing on the pending motions (#63, #64, #65, and #66) for June 27, 2013.  (#84).  On May 30, 2013, plaintiff filed replies in support of his motions to compel.  (#85 and #86).  On May 31, 2013, defendants filed a reply in support of their motion to compel.  (#87).   On June 25, 2013, the court issued a minute order rescheduling the hearing for July 18, 2013.  (#90).

### B.  Motion To Find Defendants in Violation of Order (#63)

#### 1.      Relevant Facts

On August 1, 2011, the court issued an order on several pending motions (#11, #12 #13, #14, and #30), and, as it relates to the instant motion, the court held that it "will conditionally certify the putative collective action and require notice be given to _all_ cable, internet, or telephone service installers who were employed by MC Communications, Inc. in Las Vegas, Nevada who performed such work after February 11, 2008, and who were paid on a piece rate or point system basis."  (#35)(emphasis added).  The court also ordered that defendants "provide to Plaintiff's counsel the names, addresses,

telephone numbers, and email addresses for _all_ putative collective class members, to the extent Defendants have such information, within ten (10) days." *Id* (emphasis added).

Plaintiff alleges that on "March 6, 2013, at a deposition of defendant Wehrman, the defendants revealed, for the first time, that defendants had intentionally failed to disclose certain names and addresses directed by such Order [#35]," and that "[a]s a result, such persons have not received the notice of pendency directed by the Court."  (#63).  During the deposition, Wehrman testified that "defendants since 2008 have employed "commercial technicians" to install cable ("video"), telephone, and internet ("data") services," and that "[s]uch persons are compensated on a "traditional" piecework system but not by a "point" piecework system."  *Id* (Exhibit B Transcript).  He also testified that there were approximately 8-12 "commercial technicians."  *Id.*

When asked if defendants provided the names of the "commercial technicians," Wehrman stated that he did not know, and testified that he did not provide payroll records for such persons as part of the litigation.  *Id.*  On March 7, 2013, the day after the deposition, plaintiff's counsel wrote defense counsel asking them to address defendants' failure to disclose the names and comply with the court's order.  *Id* (Exhibit C).  Defense counsel responded on March 11, 2013, by refusing to provide such names, and claiming as follows:

(1) Plaintiff was taking a "newly asserted" position that "commercial installers" should be part of this case;

(2) That defendants have determined that "commercial installers" constitute a different "class" of persons who are outside the Court's Order. Defendants have also determined if plaintiff had stated in their motion seeking a Notice of Pendency that the relevant "class" should "include commercial installers" the Court would have never granted that relief;

(3) That plaintiff's counsel was "trying to play [games] to pressure our clients into settlement, but it is a bad faith game."

4

(4) That plaintiff's counsel was "welcome to file your threatened motion for sanctions, but please be advised that we will seek fees and costs should you do so, as this newly asserted argument is made in bad faith."

*Id* (Exhibit D). Plaintiff asserts that he attempted to resolve this issue with defendants, but defendants have "refused...to remedy their aforementioned violation." *Id.*

### 2.     Plaintiff's Arguments

Plaintiff argues that "[a]t no time prior to March 11, 2013, did defendants ever communicate their belief "commercial installers" constituted a separate "class" that was outside of, and not subject to, the Court's Order," "[n]or did defendants ever assert a Notice of Pendency should not extend to such persons prior to the issuance of such Order." (#63). Plaintiff also argues that defendants' opposition to the original motion (#22) did not mention this other class of commercial installers. *Id.* Plaintiff asserts that his motion clearly sought circulation of a notice of pendency to "all" installers, the court's order was clear that "all" installers in Las Vegas, Nevada, were to receive notice, and that ""commercial installers" met the criteria specified in the Order." *Id.*

Plaintiff asks this court to "remedy defendants' evasion of its Order by directing a suitable new and revised Notice of Pendency circulate to the persons omitted by the defendants from the prior Notice of Pendency circulation," and asserts that "[s]uch persons should have 90 days from the mailing of that Notice to "opt in" to this case." *Id.* Plaintiff states that "[t]he Court should also toll the statute of limitations and have any responses to that new Notice of Pendency deemed filed, for FLSA statute of limitation purposes, as of August 30, 2011, which is ten days after the original Notice of Pendency was to be circulated," and grant plaintiff an additional 120 days to conduct discovery. *Id.* Plaintiff contends that "[i]n the event any new Notice of Pendency is returned as undeliverable by the postal service, defendants should pay the plaintiff's counsel $35.00 to perform a detailed computer trace on each such

1   person to locate a current address." *Id.* Plaintiff also asks this court to enter sanctions against

2   defendants for violating the court's order. *Id.*

3   **3.   Defendants' Opposition**

4   Defendants assert that the motion should be denied because (1) plaintiff's own declarations,

5   "upon which he heavily relied in seeking conditional certification, and upon which this Court explicitly

6   relied in granting conditional certification, contain detailed factual assertions which by their very terms

7   exclude Commercial Installers," (2) "Residential and Commercial Installers are two completely different

8   classes of employees, and at all times during his employment with MCC, Plaintiff was employed as a

9   Residential Installer," (3) "Plaintiff does not even have a class representative for Commercial Installers,"

10  and (4) the timing of Plaintiff's Motion for Sanctions, made only after Defendants refused to accede to

11  Plaintiff's unreasonable settlement demands, and which Plaintiff repeatedly threatened to file if

12  Defendants would not settle or agree to a stay of the case, shows that Plaintiff has filed this Motion

13  purely as an improper settlement pressure tactic." (#70).

14  **a.   Alleged Differences**

15  Defendants state that there is a difference between residential installers, such as plaintiff, and

16  commercial installers, and that the defendants consider them to be "two separate and distinct groups of

17  employees." *Id.* Defendants assert that the differences include, but are not limited to, (a) "[e]ach of

18  these departments have different Managers and Supervisors who manage and supervise the Installers

19  within their department," (b) "[t]he Commercial and Residential departments at MCC also report to

20  entirely different departments at Cox Communications ("Cox"), the company for which MCC performs

21  installations," (c) "Residential Installers have weekly department meetings, but no such weekly

22  meetings are held for Commercial Installers," (d) "Residential and Commercial Installers also have very

23  different work day schedules," (e) "Residential Installers are assigned jobs based on two-hour time

24  slots," (f) Commercial Installers have an 8:00 a.m.-12:00 p.m. time slot, a 1:00-5:00 p.m. time slot, and

a 8:00 a.m.-5:00 p.m. time slot, (g) "Residential Installers are generally required to come back to MCC's office at the end of the day, Commercial Installers do not come back to MCC's office at the end of the day," (h) "Commercial Installers...do not input any information into TOA, and job reassignments during the day are much less frequent," and (I) "Residential Installers are paid on a piece-rate basis," while "Commercial Installers are sometimes paid on a piece-rate basis and sometimes paid on an hourly basis." *Id.*

Defendants also assert that plaintiff's declaration in support of the motion for circulation (#12), defendants' opposition (#22), and plaintiff's declaration attached to his reply in support of the motion for circulation (#27) included several statements that are specific to residential installers, and that the court relied on those statements in its ruling (#35). *Id.* Defendants argue that plaintiff is improperly trying to include the commercial installers as a way to force the defendants to settle the claims. *Id.*

**4.      Plaintiff's Reply**

Plaintiff argues in his reply that he had no reason to "conceal" his intentions, and that it has been clear that he has always sought to certify a class of _all_ installers. *Id.* Plaintiff asserts that he is "not tasked with keeping track of the names of every installer employed by the defendants within a three year time frame," and that he "had no basis to suspect, or even question, whether defendants were acting in full compliance with Judge Pro's Order granting the circulation of notice under the FLSA to all installers." *Id.* Plaintiff asserts that his settlement negotiations are irrelevant and "improperly interjected in these proceedings," as "confidential settlement communications are a tradition in this country." *Id* (quoting *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc*., 332 F.3d 976, 980 (6th Cir. Ohio 2003)).

Plaintiff argues that the "record in this case, which so far has been developed without any knowledge of defendants' claim their "commercial" installers are outside of the "all installers" class

certified by the Court, does not support [the defendants'] assertion" that no basis exists for commercial installers to be included in the collective action.  *Id.*  Plaintiff contends that there is no reason to differentiate between the types of installers, as "[t]here is every reason to believe defendants' documented policy of ignoring the actual recorded time worked by their installers, and by doing so not paying for overtime hours actually worked, extended to all of their installers." *Id.*

At a minimum, plaintiff asserts, such evidence establishes that there was a good basis for "all" installers to receive notice of the pendency of this action and be part of the conditionally certified class." *Id.*  Plaintiff states that the defendants have not provided the daily tick sheets and weekly reconciliations for its "commercial" installers, and that without those documents, it is impossible to determine if the same sort of "willful violations" of the FLSA were occurring for the commercial installers.  *Id.*  Plaintiff rebuts several of the defendants' alleged differences between the commercial and residential installers, and argued during the hearing that the defendants should have raised the argument regarding the alleged differences between the residential and commercial installers two years ago when the parties were briefing the motion for circulation.  (#90).

## 5.    Discussion

The court's order specifically stated that "[t]he Court therefore will conditionally certify the putative collective action and require notice be given to all cable, internet, or telephone service installers who were employed by MC Communications, Inc. in Las Vegas, Nevada who performed such work after February 11, 2008, and who were paid on a piece rate or point system basis."  (#35).  Defense counsel admitted to the court during the hearing that the commercial installers were "employed by MC Communications, Inc," installed "cable, internet, or telephone service," and were sometimes paid on a "piece rate or point system basis," and that the there is approximately fifty (50) commercial installers who performed such work after February 11, 2008.  (#90).  Plaintiff's counsel stated that he was not aware that the defendants drew a distinction between the commercial and residential installers until the

deposition of defendant Wehrman (#63 Exhibit B).  *Id.*  Defense counsel stated during the hearing that defendants believed that plaintiff's intention was to include residential installers only, as plaintiff himself was a residential retailer and made no mention of commercial installers.  *Id.*  Based on the representations of counsel, the court finds that neither party acted in bad faith regarding the court's order including commercial installers and will not enter sanctions.

The court finds that, despite minor differences between the commercial and residential installers, both types of installers are "similarly situated" for purposes of 29 U.S.C. § 216(b) of the FLSA, and the court's order (#35) encompassed the commercial installers for purposes of conditional certification and circulation of the notice of pendency of this action.[1]  Within ten (10) days from the date of this order, defendants must provide to plaintiff the names, addresses, telephone numbers, and email addresses of all *commercial* cable, internet, or telephone service installers who were employed by MC Communications, Inc. in Las Vegas, Nevada who performed such work after February 11, 2008, and who were paid on a piece rate or point system basis.  Counsel for plaintiff will have ten (10) days from receipt of the names and addresses of the putative class members in which to circulate the notice by first class mail and email to the proposed class members at Plaintiff's counsel's expense.   Counsel for plaintiff will use the form of notice plaintiff attached to his motion for circulation of notice of the pendency of this action pursuant to 29 U.S.C. § 216(b) and for other relief (Doc. #12), with the following revisions:

a. change the opt in period to **60 days**,

b. advise potential plaintiffs that by joining the action they may have to participate in discovery, including written discovery, a deposition, and/or testify at trial, and

c. fix the typographical errors identified in the court's August 1, 2011, Order (#35).

The court finds that an extension of discovery is needed in light of the inclusion of the commercial installers, and extends discovery for one hundred and fifty (150) days from the entry of this

---

[1] This order is not intended to make a ruling on appropriate members of the class for class certification purposes under Rule 23.

order.  The court will address the scope of permitted discovery below.  During the hearing, plaintiff's counsel raised the issue of staying the instant action as the state court action is currently deciding a very similar issue of whether the commercial installers are part of the Rule 23 class in that action.  (#90). Defendants asserted that they do not agree that a stay is necessary.  *Id.*  Plaintiff may file a motion to stay the instant action if he deems necessary.  The parties also addressed the issue of the statute of limitations regarding the commercial installers.  The parties may stipulate as to the tolling of the statute of limitations, or the plaintiff may file a motion with the court.

### C.  Motion To Compel Proper Discovery Responses (#64)

#### 1.      Relevant Facts

Defendants assert that they served plaintiff with requests for production of documents on January 14, 2013, and that plaintiff failed to provide responses by the February 19, 2013, deadline. (#64).  During a meet and confer on the plaintiff's failure to timely respond to the requests, defense counsel raised the additional issue of plaintiff failing to provide defendants with his initial disclosures, including a computation of damages.  *Id.*  Plaintiff's counsel represented that the failure to respond to discovery was an oversight, and asserted that counsel would not provide the computation of attorneys fees at this time (referring counsel to response to Request No. 11 and asserting that "A computation of attorneys' fees cannot be ascertained at this time, and such fees are only proper if the plaintiffs prevail in this matter.").  *Id* (Exhibit C).

Defendants' Request No. 11 states the following:

> Please provide all documents that support, refute, or quantify Plaintiffs' request for attorney's fees and costs, including any document that will be used to quantify or establish the amount of fees and costs to be requested to be paid by Defendants. This request includes, but is not limited to any fee agreements between Plaintiffs and their attorneys, as well as correspondence, billing statements, ledgers, and time records, in either paper or electronic format, that demonstrate the amount of time Plaintiffs' attorneys spent in representing Plaintiffs and the value of the services provided. (Note: This document request specifically contemplates that the responses will be redacted to exclude

information about the substance of the attorney-client relationship, litigation strategy, or the specific nature of the services provided.).

*Id* (Exhibit A).

Plaintiff's response to No. 11 is as follows:

OBJECTION: The amount of attorney's fees or costs owed to plaintiffs counsel is only properly determined at such time. a request for attorney's fees or costs is presented to the Court and/or it is only after it is determined by the Court such fees or costs should be awarded and a request is made in respect to the amount of such fees or costs to be awarded. Until such time there is no basis or reason for determining such fees or costs and plaintiff s counsel declines to do so as such demand is unduly burdensome, harassing, and not made in good faith.
RESPONSE: Plaintiffs will provide no response pursuant to the objections above.

*Id* (Exhibit D).

During a second meet and confer, plaintiff's counsel maintained the argument that he "is not required to provide any information or documents regarding Plaintiffs' attorneys' fees incurred until after a request for attorneys' fees had been presented to the Court." *Id* (Exhibit F). Plaintiff's counsel also stated that he would provide the computation of damages no later than April 12, 2013. *Id.* As of the date of filing the motion, defendant had not received the plaintiff's initial disclosures. *Id.*

## 2. Defendants' Arguments

Defendants argue that plaintiff has failed to provide initial disclosures or to timely respond to Request No. 11, and ask this court to compel plaintiff to do so. *Id.* Defendants assert that plaintiff waived any objections by not timely providing responses to the requests for production of documents. *Id.* Defendants argue that since plaintiff has "alleged entitlement to their attorneys' fees and costs, they have put this information directly at issue" and must provide discovery related thereto. *Id.* Defendants also argue that "fee arrangements between a client and his attorney are discoverable and are not protected by attorney-client privilege or the attorney work-product doctrine. *Montgomery Cty. v. Micro Vote Corp.*, 175 F.3d 296, 304 (3d Cir. 1999)," and "billing statements that provide only a generalized

description of work performed are discoverable. *Clarke v. Am. Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992)." *Id.*

Defendants assert that "the amount of their attorneys' fees and costs are needed to, among other things, calculate an offer of judgment and evaluate settlement. *See* FRCP 68(a) (providing that a defendant "may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued."); *see also Norris v. Sysco Corp.*, 191 F.3d 1043, 1052 (9th Cir. 1999) ("It is the obligation of the party who seeks fees to document 'the appropriate hours expended and hourly rates' and he 'should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims. "')" *Id.*

### 3.      Plaintiff's Arguments

Plaintiff asserts that the portion of defendants' motion seeking plaintiff to supplement the initial disclosures is moot, as plaintiff provided defendants with a supplemental initial disclosure statement after the motion was filed. (#81). Plaintiff first addresses the issue of waiver of objections, and asserts that "[w]hile it is true that generally objections are deemed waived if not timely asserted, Courts in this District have viewed such rule as implicitly a matter of discretion of the District Court." *Id.* Plaintiff states that the responses were untimely due to counsel's oversight, and that counsel promptly drafted and sent responses once he was notified of the failure to do so. *Id.* Plaintiff argues the court should view this as "good faith remedial actions" as the court did in *Solorzano v. Shell Chemical Co.*, 2001 U.S. App LEXIS 30166, at *17 (5th Cir. 2001). *Id.*

Plaintiff next addresses the issue of attorneys' fees as damages for the purposes of Rule 26, and argues that "[d]efendants cite to no statute or court decision supporting their claim, nor attempt to explain why attorneys' fees under the FLSA are considered a category of damages." *Id.* Plaintiff contends that "[d]amages are "Money claimed by, or ordered to be paid to, a person as compensation for a loss or injury." Black's Law Dictionary, Ninth Ed," and that "[p]laintiff's attorney's fees do not

represent a "loss" or "injury" to the plaintiff." *Id.*   Plaintiff represents to the court that "[h]is attorneys are retained on a contingency basis, so he has incurred, and will incur, no out of pocket costs or "loss" or "injury" or damages as a result of their services that he will seek to collect from defendants." *Id.* Plaintiff contends that the right to be awarded attorneys' fees under the FLSA has yet to accrue, and that such a right is purely "derivative." *Id.*

### 4.      Defendants' Reply

Defendants argue that the court should grant their motion, as (1) plaintiff has failed to demonstrate good cause for his untimely responses, and thus waived the objections, (2) the defendants are entitled to production of documents quantifying plaintiff's attorney fees and costs incurred thus far for which plaintiff intends to seek reimbursement, (3) that the production may require time and energy does not excuse plaintiff from compliance, (4) plaintiff misstates defendants' argument and combined two arguments, (5) the cases cited are not distinguishable as plaintiff contends, and (6) the plaintiff did not "supplement" his initial disclosures, rather he provided for the first time his initial disclosures, and needs to supplement them.  (#87).

Defendants contend that "[b]ased on the minimal amount of information provided in Plaintiffs' Initial Disclosures and the small number of opt-in plaintiffs in this case, Plaintiffs' attorneys' fees are certain to greatly exceed any alleged unpaid wages or overtime this Court may ultimately award," and that "[d]efendants need to know the amount of attorneys' fees incurred up to this point for which Plaintiffs or their counsel will seek reimbursement should they ultimately prevail." *Id.*

Defendants address the plaintiff's "supplemental initial disclosures," and assert that "what Plaintiffs served was their Initial Disclosures - not a supplement - and they did not do so until April 18, 2013: the very last day of the discovery period." *Id.*   Defendants argue that the request for a computation of damages is not moot, as plaintiff contends, because the statement of damages in Plaintiffs' Initial Disclosures is grossly deficient and blame their failure to provide an appropriate

1   damages computation on Defendants, claiming they still require some unspecified additional documents

2   from Defendants before they can give an accurate and complete damages estimate." *Id* (Exhibit D).

3          Defendants contend that "[p]rior to Plaintiffs' belated service of the Initial Disclosures,

4   Defendants had produced numerous timesheets, ADP payroll records, electronic payroll records, and the

5   personnel files for Plaintiffs. Additionally, on April 18 and May 2, Defendants produced additional

6   W-2s, time sheets, electronic payroll records, and ADP payroll records." *Id.*   Even after receiving these

7   documents, plaintiffs have not supplemented their initial disclosures.  *Id.*    Defendants argue that

8   "[p]laintiffs have a duty to supplement their damages calculation" and that this court "should order

9   Plaintiffs to supplement their damages calculation so that it complies with FRCP 26."  *Id.*

10          **5.      Discussion**

11                   **a. Computation of Damages**

12          Pursuant to Federal Rule of Civil Procedure 26(a)(1)(A)(iii), "[a] party must, without awaiting a

13   discovery request, provide to the other parties: ... a computation of each category of damages claimed by

14   the disclosing party - who must also make available for inspection and copying as under Rule 34 the

15   documents or other evidentiary material, unless privileged or protected from disclosure, on which each

16   computation is based, including materials bearing on the nature and extend of injuries suffered ..."   Rule

17   26(a)(1)(E) provides that "[a] party must make its initial disclosures based on the information then

18   reasonably available to it. A party is not excused from making its disclosures because it has not fully

19   investigated the case or because it challenges the sufficiency of another party's disclosures or because

20   another party has not made its disclosures."   Fed. R. Civ. P. 26(a)(1)(E).  Rule 26(e) requires a party

21   supplement its initial disclosures "in a timely manner if the party learns that in some material respect the

22   disclosure or response is incomplete or incorrect, and if the additional or corrective information has not

23   otherwise been made known to the other parties during the discovery process or in writing; or as ordered

24   by the court."  Fed. R. Civ. P. 26(e)(1)(A) and (B).

25

Plaintiff's initial disclosures state, among other things, that (1) "[p]laintiffs' computation of damages cannot be accurately performed until they are in possession of all necessary and accurate and relevant payroll and time record from defendants," (2) "plaintiffs can generally respond that they are seeking unpaid overtime wages under the FLSA and liquidated damages on such overtime wages," (3) for each week that each plaintiff was employed by defendants with the relevant time period, their "unpaid overtime wages do not exceed $750.00 for each week," (4) "[i]t is estimated that the amount of unpaid overtime wages owed for each such week probably does not exceed $462.00," and (5) "Plaintiffs are unable to state how many weeks they are owed any overtime wages or provide a more accurate statement at this time of unpaid overtime wages owed to them as a result of defendants' failure to comply with plaintiffs' discovery requests." (#81 Exhibit D).

These initial disclosures are dated April 18, 2013. *Id.*  Since this date, defendants have provided plaintiff with additional W-2s, time sheets, electronic payroll records, and ADP payroll records (#87), and the court has ruled on plaintiff's motion to compel documents (#58 and #67).  Plaintiff has an obligation under Rule 26(e) to supplement his initial disclosures when he obtains information during the discovery process. *See* Fed. R. Civ. P. 26(e).  The court recognizes that the defendants must be provided with this information in order to appropriately engage in settlement negotiations and/or to prepare an offer of judgment.

As plaintiff has an obligation to supplement his computation of damages under Rule 26(e), and the sufficiency of plaintiff's computation of damages (#81 Exhibit D) is not fully briefed before the court because defendants' motion to compel sought to compel the initial disclosures (#64) and the opposition simply argued that the request was moot in light of plaintiff serving the initial disclosures (#81), the court will not order plaintiff to supplement the computation of damages at this time.  If, after a good faith meet and confer in an attempt to obtain a supplemental computation of damages, the defendants take the position that plaintiff has not satisfied his obligation under Rule 26(e), defendants

1   may file a motion with the court.  Defendants may also serve plaintiff with an interrogatory requesting

2   information relating the computation of damages.

3                    **b.        Request Regarding Attorneys' Fees**

4          As an initial matter, the court finds that plaintiff did not waive his objection to the request in

5   dispute.  Rule 34(b)(2)(A) provides that "[t]he party to whom the request is directed must respond in

6   writing within 30 days after being served," and sub-section (c) states that "[a]n objection to part of a

7   request must specify the part and permit inspection of the rest."  Fed. R. Civ. P. 34(b)(2)(A) and (C).

8   Although Rule 34 does not include a provision that states that the failure to timely object is a waiver,

9   courts that have considered the issue generally agree that there is no reason to treat waiver under Rule

10  34 any different than Rule 33.  *See Liguori v. Hansen*, 2:11-CV-00492-GMN, 2012 WL 760747 at

11  *11(D. Nev. Mar. 6, 2012).[2]  Rule 33(b)(4) provides that "[a]ny ground not stated in a timely objection

12  is waived unless the court, for good cause, excuses the failure."  Fed. R. Civ. P. 33(b)(4).  "[T]he Court

13  retains broad discretion in determining whether there is good cause. *Zivkovic*, 302 F.3d at 1087 (citing

14  *Mammoth Recreations*, 975 F.2d at 607)."  *Liguori*, 2012 WL at *11.

15         Plaintiff's responses to requests for production of documents were due on February 19, 2013.

16  (#64 Exhibit A).  On March 11, 2013, defense counsel sent a letter to plaintiff's counsel inquiring about

17  the discovery responses.  *Id* (Exhibit B).   The next day, on March 12, 2013, plaintiff's counsel

18  responded that the failure to provide the discovery responses was due to an oversight and attached the

19  discovery responses to the letter.  *Id* (Exhibit C).  The court has an interest in the "just, speedy, and

20  inexpensive" determination of this action.  Fed. R. Civ. P. 1.  It is "entirely contrary to the spirit of the

21

22  [2]  *See Fifty–Six Hope Roade Music, Ltd. v. Maya Collections, Inc*., 2007 WL 1726558 (D.Nev.) (applying good faith standard
to determine whether to relieve party from waiver under Rule 34); *see also Brown v. Stroud*, 2010 WL 3339524 (N.D.Cal.);

23  ("Although Rule 34 does not expressly provide for any relief from a waiver of objections as does Rule 33, courts have granted
such relief upon a showing of good cause."); (*EEOC v. Kovacevich* "5" *Farms*, 2007 WL 1599772 (E.D.Cal.) ("Failure to

24  respond to a Rule 34 request within the time permitted waives all objections ... absent an extension of time to respond or a
showing of good cause.") (citing *Richmark*, 959 F.2d at 1473); *Blumenthal v. Drudge*, 186 F.R.D. 236, 240 (D.D.C.1999)
(applying to Rule 34(b) requests for production the principle set forth in Rule 33(b)(4) that a court may excuse a failure to

25  timely object for good cause).

Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities." *Foman v. Davis*, 371 U.S. 178, 181 (1962).  Based on the foregoing interests of this court, and the plaintiff's prompt responses once the defendants contacted counsel regarding the discovery requests, the court finds that good cause exists to hold that plaintiff did not waive his objections.

With regard to the request for "all documents that support, refute, or quantify Plaintiffs' request for attorney's fees and costs, including any document that will be used to quantify or establish the amount of fees and costs to be requested to be paid by Defendants," this court recognizes both the importance of this information to defendants with regard to settlement negotiations and preparing an offer of judgment and the interest in maintaining the confidential nature of this information.

The court finds that the engagement letter between the plaintiff and his counsel will provide defendants with information regarding the fee arrangement that will assist defendants in determining proper settlement amounts and/or offers of judgment.  Plaintiff must provide defendants the engagement letter on or before July 29, 2013.  During the hearing, the court discussed the production of the engagement letter between plaintiff's counsel and plaintiff, and the parties agreed that if the court ordered production of the letter, redactions of settlement information would be required and that the letter would be subject to a protective order.[3]  The engagement letter may be appropriately redacted as discussed during the hearing and will be subject to a stipulated protective order.

The court also finds that in order to protect attorney-client communications and to avoid unnecessary expenses as a result of extensive redactions, defendants may serve plaintiff with interrogatories seeking detailed answers as to which attorney performed work on the action, their hourly rate, how many hours they have billed to date, and an estimate of how many hours plaintiff's counsel

---

[3] The court notes that the parties do not currently have a stipulated confidentiality/protective order on the docket, and that if the parties enter into one, the stipulation must comply with this court's Local Rules and the Ninth Circuit's directives in *Kamakana v. City and County of Honolulu*, 447 F.3d 1172 (9th Cir. 2006).

anticipates billing.  This written discovery is included in the discovery permitted during the extended discovery period ordered above.

### D.  Motion To Compel Production of Documents and Modify Discovery Schedule (#65)

#### 1.      Discovery Requests

Plaintiff's motion asks this court to compel the production of the following: (1) All "weekly reconciliations" in their possession for the three year period preceding each plaintiffs' joinder in this case," (2) All W-2 forms issued to all plaintiffs for the three year period preceding each plaintiffs' joinder in this case, (3) All payroll records, showing actual amounts of gross wages or other compensation paid each payroll period and how those amounts were calculated, and (4) Responses to Plaintiffs' Second Set of Interrogatories.  (#65).

In plaintiff's reply, he asserts that *after* the motion was filed, defendant provided supplemental disclosures, and that "[b]ased upon a review of defendants' Fifth and Sixth supplemental disclosures and the representations made in defendants' opposition, it appears as though defendants' supplemental production have rendered moot the following items sought to be compelled in plaintiff's motion: (1) W-2 records and (2)weekly reconciliation records."  (#85).  Plaintiff also asserts in his reply that the "portion of plaintiff's motion seeking payroll records for the three years preceding the filing of each opt-in plaintiff's consent to join this action under the FLSA has not been cured," but that defendants' counsel "has confirmed that such records will be produced for all opt-in plaintiffs for the full three year statute of limitations period on each opt-in plaintiff's claims."  *Id.*  Plaintiff states that he "is satisfied that this portion of his motion may be rendered moot upon production, but reserves his right to renew this portion of his motion should defendants fail to produce fully responsive payroll records."  *Id.*   The reply only addresses the (1) Responses to Plaintiff's Second Set of Interrogatories; (2) Request to Modify the Discovery Schedule; and (3) Award of Costs.  *Id.*   As such, the court limits its discussion to these issues.

### 2.      Responses to Plaintiff's Second Set of Interrogatories

Plaintiff's interrogatory No 3. requests the defendants to "[s]et forth the name, last known address, and last known telephone numbers of all managers, assistant managers, and supervisors formerly employed by the defendants, such persons have been so employed by the defendants any time after February 11, 2008."  (#80 Exhibit H).  Defendants responded by providing the contact information for the "former manage[r]s, assistant managers, or supervisors for the residential department..." *Id.*  As the court finds that commercial installers are included in the group of "cable, internet, or telephone service installers" at this stage of the litigation and have ordered herein for notice of this action to be sent to the commercial installers, the court finds that the contact information of commercial installers' managers, assistant managers, and supervisors is relevant and discoverable in this action.  *See* Fed. R. Civ. P. 26(b)(providing that a party is entitled to discovery of information that is "relevant to any party's claim or defense..." or, for good cause shown, "relevant to the subject matter involved in the action."); *See Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978)(holding that relevance within the meaning of Rule 26(b)(1) is considerably broader than relevance for trial purposes, and that for discovery purposes, relevance means only that the materials sought are reasonably calculated to lead to the discovery of admissible evidence).

On or before July 29, 2013, defendants must provide the name, last known address, and last known telephone numbers of *all commercial* installers' managers, assistant managers, and supervisors formerly employed by the defendants, such persons have been so employed by the defendants any time after February 11, 2008.

### 3.      Extension of Discovery

With regard to the request to extend discovery, plaintiff argues that even though "defendants have pledged to provide electronic payroll records for a three year statute of limitations period for each plaintiff in this case," and "defendants are now working diligently on securing such records from their

third-party payroll provider, the fact remains that such records have yet to be produced to plaintiff's counsel."  (#85).  Plaintiff contends that the extension of discovery deadline to June 18, 2013, is "insufficient to allow for a full analysis of such payroll records," and that "such deadline, which is less than three weeks from the filing of this Reply, does not even allow plaintiff to conduct further discovery after being provided with the payroll records."  *Id.*  Defendants argue that the request to modify the discovery schedule is moot, and that "nowhere within the Motion is there any discussion of a proposed discovery schedule modification."  *Id.*

As the court stated herein, extending discovery is warranted in light of the inclusion of commercial installers.  The court recognizes that additional follow-up discovery may be needed regarding defendants' document production of payroll records.  The request to extend discovery is partially granted as follows: Discovery is extended one hundred and fifty (150) days from the entry of this order, and is limited to (1) commercial installers, (2) follow-up on documents relating to pay-roll, and (3) the attorney-client issue discussed below.

**E.  Motion To Compel Defendants to Answer at a Deposition Questions Relating to Certain Attorney-Client Communications (#66)**

**1.     Relevant Facts**

Plaintiff conducted the defendants' Rule 30(b)(6) deposition on April 12, 2013, and sought testimony regarding the defendants' affirmative defenses Nos. 9 and 11 (#36):

> (9) Defendants allege, assuming arguendo there is an unpaid wage violation, that Defendants at all times had a good faith and reasonable belief that it had compensated Plaintiff in accordance with the FLSA and that, therefore, no liquidated damages are due Plaintiff; and

> (11) Defendants allege that any alleged violation of the FLSA was not willful and that Plaintiff's claims are therefor limited to two years. 29 U.S.C. § 255.

(#66).  Plaintiff contends that counsel "objected to any questions concerning defendants' pre-litigation communications with their attorneys and directed that such questions not be answered."  *Id.*  Plaintiff's

counsel advised counsel why the questions are relevant to affirmative defenses 9 and 11, but after a break to consider the argument, defense counsel refused to withdraw the objections and such questioning did not proceed.  *Id.*

On April 16, 2013, plaintiff's counsel contacted defense counsel and provided counsel with relevant precedents regarding the issue, but defendant refused to withdraw the objections and would not allow the deposition to continue.  *Id.*   Plaintiff filed the instant motion on April 18, 2013.  *Id.*

### 2.    Plaintiff's Arguments

Plaintiff argues that since the affirmative defenses "involve proof of defendants' state of mind," "they render highly relevant the defendants' knowledge of their legal obligations under the FLSA, their inquiries about those legal obligations, and the decisions they made in respect to such legal obligations." (#66).  Plaintiff contends that "[i]t is not disputed that defendants, prior to the time period at issue in this case, engaged in communications with their attorneys about the FLSA and state wage and hour laws that are similar to the FLSA," and that the attorney-client privilege cannot shield discovery into such discussions.  *Id.*

Plaintiff relies on the case of *Wang v. Hearst Corp.*, 2012 U.S. Dist. LEXIS 179609 (S.D.N.Y. December 19, 2012), where the court "recently opined on whether the sort of FLSA affirmative defenses at issue in this case create an attorney client privilege waiver even when the defendant is *not* claiming "reliance upon advice of counsel" as part of such defenses."  *Id* (emphasis in original).  The *Wang* court held that such FLSA defenses "...undoubtedly raises the possibility of implied waiver, and the question before this Court is "[w]hether fairness requires disclosure" in the "specific context in which the privilege is asserted."  2012 U.S. Dist. LEXIS 179609 at p. 7, citing and quoting *In re County of Erie*, 546 F.3d 222, 229 (2d Cir. 2008), quoting in turn *In re Grand Jury Proceedings*, 219 F.3d 175, 183 (2d Cir. 2000).

The plaintiff argues that fairness requires disclosure in this case, as the "affirmative defenses being raised require a determination of the defendants' knowledge of, diligence in ascertaining, and good faith beliefs about, the legal requirements of the FLSA," and "[d]efendants, having elected to prove these issues, cannot now refuse to disclose what they actually communicated about or attempted to communicate about such legal requirements with their attorneys." *Id.*  Plaintiff also relies on the case of *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162,(9th Cir. 1992), which stated:

> The privilege which protects attorney-client communications may not be used both as a sword and a shield. *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991). Where a party raises a claim which in fairness requires disclosure of the protected communication, the privilege may be implicitly waived. *Id.* In *Bilzerian* the defendant's intent was in issue because he thought his actions were legal, and had discussed the allegedly fraudulent transactions with his attorney. According to the Second Circuit this "would have put his knowledge of the law and the basis for his understanding of what the law required in issue. His conversations with counsel regarding the legality of his schemes would have been directly relevant in determining the extent of his knowledge and, as a result, his intent." *Id*. at 1292.

*Id.*  Plaintiff argues that this case is "undistinguishable from *Chevron*," as "[d]efendants in this case claim they acted with a proper, diligent, and good faith, awareness and scrutiny of their legal obligations under the FLSA," "[y]et they refuse to disclose the information obtained from their attorneys about such legal obligations." *Id.*

Plaintiff asks this court to award attorneys' fees and costs for having to bring this motion because defendants "simply ignore that [they], through their affirmative defenses, have placed at issue their pre-litigation knowledge of the FLSA's legal requirements, including knowledge obtained from communications with attorneys." *Id.*  Plaintiff asserts that, at a minimum, defendants should bear the court reporter costs for a continued Rule 30(b)(6) deposition on the subject matter. *Id.*

### 3.    Defendants' Opposition

Defendants contend that their affirmative defenses "are not based at all upon communications with counsel, but rather, upon communications with the Department of Labor," and as such, they have

not placed their attorney-client communications at issue in this litigation.  (#79).  Defendants assert that counsel permitted the Rule 30(b)(6) deponent to be deposed regarding communications with the Department of Labor, and that "[a]t no point did Plaintiffs' counsel ask whether Plaintiffs ninth or eleventh affirmative defenses were at all based on communications with counsel that occurred prior to the initiation of this lawsuit."  *Id.*

The 30(b)(6) deponent answered "No," when asked if "MC Communications ever ma[d]e any attempt to hire an attorney to review the manner in which MC Communications paid their technicians to make sure that it complies with FLSA?"  *Id* (Exhibit C).  Defendant argues that "Plaintiffs either (a) did not ask proper deposition questions, which would have revealed that Defendants were not basing their affirmative defenses on attorney- client communications, or (b) were seeking a carte blanche waiver of all attorney-client communications."  *Id.*

Defendants stress to the court that their affirmative defenses **are not based on attorney-client communications.**  *Id.*  Defendants contend that "[n]umerous courts have recognized that the affirmative defenses of good faith and lack willfulness under the FLSA may be established based on information other than the advice of counsel,[4]" and that "nothing in the text of the FLSA requires that

---

[4] *See e.g., Mireles v. Frio Foods, Inc.*, 899 F.2d 1407, 1416 (5th Cir. 1990) ("Simply failing to seek legal advice concerning its pay practice does not evidence a willful violation of the statute."); *Phillips v. CR. Bard, Inc.*, 2013 WL 1333790, *23-24 (D.Nev., Mar. 29, 2013) ("Plaintiff is asking the court to make a leap between the assertion of broad affirmative defenses by Bard and various documents that Plaintiff speculates Bard will rely on in proving these defenses .... it is not readily apparent at this point in time that Bard will be relying on any specific documents it has withheld to support its defenses. In other words, the court cannot conclude at this point that Bard has affirmatively put those documents 'at-issue.' ... In sum, the court declines to enter a blanket ruling at this time that Bard has waived the assertion ofthe attorney-client privilege or work product doctrine as to a broad category of documents by placing them 'at issue.'"); *Abbe v. City of San Diego*, 2007 WL 4146696, *17 (S.D.Cal., Nov. 9,2007) ("Plaintiffs argue by asserting a good faith defense [to FLSA claim], Defendant has waived its attorney-client privilege because Defendant in fact is asse11ing the advice of counsel defense ... Defendant's answer does not reveal reliance upon defense of advice of counsel, nor may such be presumed. Accordingly, the Court declines to rule that Defendant has implicitly waived the attorney-client privilege in its Answer."); *Zachary v. Rescare Okla., Inc.*, 471 F.Supp.2d 1183, 1190 (N.D.Okla. 2006) (finding lack of willfulness under FLSA established based on employer's letter from Department of Labor issued after investigation, stating that conduct did not violate FLSA); *Herman v. Hogar Praderas de Amor, Inc.*, 130 F.Supp.2d 257, 267-68 (D.P.R. 2001) (finding good faith under FLSA based on information employer received from Department of Labor and employer's prompt revision of rates once notified by Department of Labor that there was an issue with pay rates); *Nelson v. Alabama Inst. for Deaf & Blind*, 896 F.Supp. 1108, 1115 (N.D.Ala. 1995) (finding good faith under FLSA based on employer's attendance of seminars, studying statutes, regulations, and agency opinions, and meeting with Department of Labor officials); *Clay v. City of Winona, Miss.*, 753 F.Supp. 624, 630 (N.D.Miss. 1990) (finding good faith under FLSA established based on employer's communications with and seeking of advice from Department of Labor and review of the Fair Labor Standards Handbook in attempt to comply with FLSA).

these defenses be based on advice of counsel. See 29 U.S.C. §§ 255,260." *Id.* The court in *Harter v. Univ. of Indianapolis,* 5 F.Supp.2d 657, 664 (S.D. Ind. 1998), held that "[t]he better-reasoned cases hold, however, that when a client files a lawsuit in which his or her state of mind (such as good faith or intent) may be relevant, the client does not implicitly waive the attorney-client privilege as to all relevant communications unless the client relies specifically on advice of counsel to support a claim or defense." Defendants argue that this seems to be the majority view, and cite several cases for this position.[5] *Id.*

Defendants distinguish the *Chevron* case relied upon by the plaintiff, and assert that the defendants there "asserted a defense that it's conduct was reasonable because "this position was taken pursuant to the advice of its lawyers", and was attempting to use its attorneys' advice both as a sword (by asserting its tax position was reasonable because it was based on advice of counsel) and as a shield (by claiming the attorney-client privilege for that advice from counsel)." *Id.* Here, defendants are not relying on the advice of counsel and are not trying to use the information as a sword and shield. *Id.*

Defendants argue that they have not waived their attorney-client privilege by asserting their 9th and 11th affirmative defenses, and that "[w]hen assessing a claim of waiver, "a court should begin its

---

[5]   *See also Gerawan Farming, Inc. v. Prima Bella Produce, Inc.*, 2011 WL 2531072, *8 (E.D.Cal., Jun. 23, 2011) (finding privilege not waived where plaintiffs had not sought to use counsel as witnesses and stated they would not assert that actions were based in good faith reliance on attorney advice); *Sorensen v. Black & Decker Corp.*, 2007 WL 1976652, *2 (S.D.Cal., Apr. 9, 2007) ("The privilege is waived when a party chooses to utilize the information to advance a claim or defense. B & D does not assert advice of counsel as a defense, and it has not used attorney-client communications to prove this defense."); *Genentech, Inc. v. Insmed, Inc.*, 236 F.R.D. 466, 469 (N.D.Cai. 2006) ("Advice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner."); *Beneficial Franchise Co., Inc. v. Bank One, NA.*, 205 F.R.D. 212,216-17 (N.D.III. 2001) ("we do not believe that merely asserting a defense or a claim is sufficient, without more, to waive the privilege. Were it otherwise, then any party asserting a claim or defense on which it bears the burden of proof would be stripped of its privilege and left with the draconian choice of abandoning its claim and/or defense or pursuing and protecting its privilege. The impracticality of such a rule is revealed when viewed in reverse: waiver of the privilege would apply not only to assertions of affirmative defenses but also by parity of reasoning to claims raised by a plaintiff that require proof of a mental state - such as a fraudulent inducement claim. Such a rule would exact too stiff a price for the assertion of commonly-pled claims and defenses."); *N River Ins. Co. v. Philadelphia Reinsurance Corp.*, 797 F.Supp. 363, 370 (D.N.J., 1992) (finding "in issue" doctrine only resulted in waiver where a "party has asserted a claim or defense that he intends to prove by disclosure of an attorney-client communication."); *Remington Arms Co. v. Liberty Mut. Ins. Co.*, 142 F.R.D. 508, 415 (D.Dei. 1992) ("the party can still make its choice explicitly and assume the risk for failing to disclose materials claimed to be necessary to determine the truth where the party has the burden of proof. ... The Court cannot justify finding a waiver of privileged information merely to provide the opposing party information helpful to its cross-examination or because information is relevant.").

analysis with a presumption in favor of preserving the privilege." *Greater Newburyport Clamshell Alliance v. Public Servo Co. of NH*, 838 F.2d 13,20 (lst Cir. 1988) (cited with approval in *Bittaker*, 331 F.3d at 720-21)." *Id.*

Defendants state that the Ninth Circuit "employs a three-part test to determine whether an implied waiver has occurred.  First, the court evaluates whether the party is invoking a "privilege as the result of some affirmative act, such as filing suit." *Home Indem. Co. v. Lane Powell Moss & Miller*, 43 F.3d 1322, 1326 (9th Cir. 1995). Second, the court considers whether, "through this affirmative act, the asserting party puts the privileged information at issue." *Id.* Finally, the court assesses whether "allowing the privilege would deny the opposing party access to information vital to its [case]." *Id.* The "overarching consideration" in analyzing these factors "is whether allowing the privilege to protect against disclosure of the information would be 'manifestly unfair' to the opposing party." *Id.* (emphasis added) (quoting *Hearn v. Rhay,* 68 F.R.D. 574, 581 (E.D. Wash. 1975)). As discussed above, Defendants' have not put their communications with counsel at issue." *Id.*

Defendants argue that since the defenses do not rely on the attorney-client communications, they cannot be deemed "vital" to the plaintiff's ability to contest defendants' affirmative defenses, and denying the discovery would not be "manifestly unfair." *Id.*  Defendants assert that permitting an unlimited waiver would create a "chilling effect" that "not only frustrates the purposes of the attorney-client privilege, but also the very goals of the FLSA by discouraging employers from seeking out legal advice to ensure that they take appropriate steps to remedy alleged wage and hour violations." *Id.*

### 4.    Plaintiff's Reply

The plaintiff asserts in his reply that " [t]he affirmative defenses raised by defendants rest upon their claims that (1) They acted with appropriate diligence to ascertain the legal requirements of the FLSA and (2) That they acted in a good faith fashion to comply with those legal requirements," and that

the defendants "do not deny they discussed the legal requirements imposed by the FLSA with their attorneys, but insist because they are not relying upon the advice given by their attorneys they need not disclose their communications with such counsel." (#86). Plaintiff argues that the affirmative defenses "require findings be made about the defendants' knowledge of the FLSA's legal requirements and their good faith efforts to obtain such knowledge." *Id.* Plaintiff contends that defendants cannot assert that they acted based upon knowledge of the law acquired in good faith, and then refuse to disclose the knowledge they obtained from counsel with whom they consulted with. *Id.*

Plaintiff asserts that the court should consider the ruling in *Clark v. United States*, 289 U.S. 1, 15 (1933), where the court held:

> There is a privilege protecting communications between attorney and client. The privilege takes flight if the relation is abused. A client who consults an attorney for advice that will serve him in the commission of a fraud will have no help from the law. He must let the truth be told.

*Id.* Plaintiff clarifies for the court that he does not seek a broad waiver of the attorney-client privilege, rather seeks discovery of communications "(1) Involving compliance with the FLSA or state laws governing overtime pay and minimum wage requirements (state laws and the FLSA are substantially analogous in many respects on those issues); and (2) That took place with counsel prior to the commencement of this lawsuit." *Id.*

Plaintiff argues that the "minority approach" relied upon by defendants is not the approach adopted by the Ninth Circuit, and that the Ninth Circuit has adopted the majority "fairness principle," which does not limit waiver to circumstances where the party expressly claims reliance upon the

26

privileged communications sought to be disclosed.  *Id.*[6]  Plaintiff also argues that the defendants

misrepresent and ignore the actual holdings of several cases.[7]  *Id.*

Plaintiff relies on *Lambright v. Ryan*, 698 F.3d 808, 818-19 (9th Cir. 2012), where "the Ninth

Circuit revisited the "in fairness" implied waiver doctrine" and held that in the Ninth Circuit it is the

assertion of a claim, not reliance on any privileged communication, that creates a potential "in fairness"

waiver.  *Id.*  Plaintiff asserts that defendants' argument regarding the "vital" communications and the

"manifestly unjust" result misconstrues the relevant standard and the actual holding in *Hearn v. Rhay,*

68 F.R.D. at 581.  *Id.*  Plaintiff argues that "[t]he use of the word "vital"...must be construed within the

overall "fairness" framework. It does not impose some sort of rarified, seldom met, level for waiver to

be found. Rather, it refers to disclosures that go to the very heart of the claims being raised by

defendant, not peripheral, collateral, or secondary issues."  *Id.*

Plaintiff states that defendants have been sued under the FLSA before, and that "[w]hat efforts

they made in response to those matters to obtain legal knowledge of their FLSA obligations, and the

information they were provided about those legal obligations in response to those matters, is highly

relevant."  *Id.*  Since defendants are seeking to establish that they "diligently inquired about the FLSA's

legal requirements and acted in good faith to comply with those legal requirements, it is relevant what

an attorney actually told them.  *Id.*  If defendants <u>did not consult a legal professional</u>, plaintiff argues, it

---

[6]  Plaintiff relies on the following cases: *Bittaker v. Woodford,* 331 F.3d 715, 719 (9th Cir. 2003)(En Banc)("In practical terms, this [fairness principle] means that parties in litigation may not abuse the privilege by asserting claims the opposing party cannot adequately dispute unless it has access to the privileged materials."); *United States v. Amlani,* 169 F.3d 1189, 1195 (9th Cir. 1999)(This "fairness" examination, and potential privilege waiver, is triggered when a party makes a claim in the litigation that "puts the privileged information at issue.");*Hernandez v. Creative Concepts*, 2:10-cv-02132-PMP-VCF, 2013 U.S. Dist. LEXIS 34612, March 13, 2013 (discussed herein).

[7]  Plaintiff argues that in*Tennenbaum v. Deloitte & Touche,* 77 F.3d 337, 340-41 (9th Cir. 1996), the party "did not raise any claims that implicated its legal knowledge or efforts to obtain knowledge of the law;" and that in *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992), "[w]hile the defendant did assert it received specific advice from counsel on the tax issues, the reason for the waiver was not an express reliance upon any communications with such counsel identified in the Chevron decision. Waiver resulted from the defendant's assertion its actions were motivated by tax considerations, raising a question of what information it actually received about those tax considerations."

1    "would certainly undermine defendants' claim that they acted with due diligence in ascertaining what

2    their legal obligations were under the FLSA."  *Id.*

3        **5.   Discussion**

4        During the hearing, the court discussed whether the parties could stipulate that the defendants did

5    not rely on the advice of counsel and will not introduce evidence of such communications at trial in

6    support of their affirmative defenses at issue here.  (#90).  The plaintiff stated that he would accept such

7    a stipulation, and defense counsel stated that the stipulation would have to be narrowly tailored as to the

8    case specific facts.  *Id.*   Plaintiff argued to the court that previous FLSA litigations involving the

9    defendants demonstrate that there is no question that defendants received advice of counsel regarding

10   defendants' obligations under FLSA.  *Id.*  Defense counsel argued that the allegations in those actions

11   were different from those allegations here, which defendant asserts is the narrow issue of plaintiff and

12   other installers performing "off the clock" work in violation of FLSA.  *Id.*

13       As this court has previously found in *Hernandez v. Creative Concepts*, 2:10-cv-02132-PMP-VCF,

14   2013 U.S. Dist. LEXIS 34612, March 13, 2013:

15           "Where a party raises a claim which in fairness requires disclosure of the
             protected communication, the privilege may be implicitly waived." *Kaiser Found.*
16           *Health Plan, Inc. v. Abbott Laboratories, Inc.*, 552 F.3d 1033, 1042 (9th Cir.
             2009)(quoting *Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th
17           Cir.1992) (citing *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir.1991)).
             Where a client's state of mind or knowledge, such as whether the client acted
18           negligently or deceptively, is at issue, "the attorney-client privilege with respect
             to attorney-client communications that have bearing on that state of mind or
19           knowledge may be waived." *King-Fisher Company v. United States*, 58 Fed.Cl.
             570, 572 (2003). A defendant waives the attorney-client privilege where its good
20           faith defense places knowledge of the law and its communications with counsel
             directly at issue. *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2nd Cir.) (Circ.
21           Denied, 502 U.S. 813, 112 S. Ct. 63, 116 L. Ed. 2d 39, 1991). "Even if the
             privilege holder does not attempt to make use of the privileged communication,
22           he may waive the privilege if he makes factual assertions, the truth of which can
             only be assessed by examination of the privileged communications." *In re:*
23           *Kidder Peabody Sec. Litig.*, 168 F.R.D. 459, 470 (S.D.N.Y. 1996) (emphasis
             added).

24

25

Plaintiff's remaining claim in the complaint alleges violations of 29 U.S.C. § 206 and § 207. (#7-2). Plaintiff asserts the following factual allegations against defendants:

> The compensation system used by the defendants for the plaintiff and those similarly situated was a *de facto* "piecework no overtime" system, meaning such employees were being paid a certain amount for each "piece" of work they performed pursuant to a schedule, the plaintiffs not being paid time and one-half their "regular hourly rate" for work in excess of 40 hours a week as required by the FLSA and Nevada law based upon the hours they actually worked each week and the total basic "piece rate" they were paid, such de facto compensation system existing even though defendants would produce certain false and misleading payroll records indicating that either proper overtime Or some measure of overtime was being paid to the plaintiff and those similarly situated when, in fact, no such overtime was being paid whatsoever, or, alternatively, defendants utilized a compensation system that did pay some measure of overtime wages upon a designated hourly rate but failed to pay any overtime wages on the additional and substantial portion of the earnings of the plaintiff and those similarly situated that were paid by the defendants solely on a piece rate basis.

> Defendants, in furtherance of their "piecework no overtime" pay scheme would falsely list certain "overtime hours" and "overtime compensation" on the plaintiff's and the putative class member's pay stubs, such listings being inaccurate in terms of hours actually worked and not reflecting any attempt to pay time and one-half the employees' "regular rate" as required by the FLSA and Nevada law, such purported "overtime" payments being based upon completely fictitious and knowingly false "regular rates" that were concocted by the defendants.

*Id.* Plaintiff also alleges that the defendants' actions were willful and that defendants knew from previous issues with the FLSA that their conduct violated the FLSA:

> Defendants' violations of the FLSA were willful in that defendants were aware the method they were purporting to pay overtime under was illegal and violated the FLSA; such violations were also willful because defendants were aware their "piecework no overtime" pay scheme had been the subject of prior lawsuits by private parties alleging such scheme violated the FLSA and prior investigations and settlements supervised by the United States Department of Labor based upon such compensation system's violation of the FLSA; defendants also evidenced their willful violation of the FLSA by concocting a false payroll record as to overtime pay and hours worked that had no relationship to the overtime hours actually worked or the actual payment of overtime, such false record being manufactured by the defendants in an attempt to conceal their knowing and willful violation of the FLSA.

*Id.*

Defendants assert two affirmative defenses that are the topic of plaintiff's motion: (9) "Defendants allege, assuming _arguendo_ there is an unpaid wage violation, that Defendants at all times had a good faith and reasonable belief that it had compensated Plaintiff in accordance with the FLSA and that, therefore, no liquidated damages are due Plaintiff;" and (11) "Defendants allege that any alleged violation of the FLSA was not willful and that Plaintiff's claims are therefor limited to two years. 29 U.S.C. § 255." (#36). Defendants, through these affirmative defenses, put their state of mind and their knowledge regarding the FLSA, its requirements, and their obligations "at issue." Any communication between defendants and counsel regarding conduct relating to the allegations in this action which could arguable form the basis for defendants' "reasonable belief" that they were acting in "good faith" and did not intentionally violate the FLSA, would have a direct bearing on the viability of defendants' affirmative defenses. The court finds, therefore, that the "at issue" exception applies. _See King-Fisher Company_, 58 Fed.Cl. at 572.

As the court recognizes, however, that privilege is a very important concept in our judicial system, the court will narrow the scope of communications that are discoverable and the means of discovery permitted. Plaintiff may serve defendants with interrogatories seeking information regarding communications between defendants and counsel, and may ask (1) if defendants and counsel communicated _prior_ to this litigation about the type of conduct that forms the basis for the allegations in the complaint (#7-2), and (2) if so, what was communicated regarding the legalities of and defendants' obligations relating to:

(A) The "piecework no overtime" system described in the complaint (#7-2);

(B) The installers allegedly not being paid time and one-half their "regular hourly rate" for work in excess of 40 hours a week as required by the FLSA based upon the hours they actually worked each week and the total basic "piece rate" they were paid;

(C) Defendants allegedly producing certain false and misleading payroll records indicating that either proper overtime or some measure of overtime was being paid to the plaintiff and those similarly situated when, in fact, no such overtime was being paid;

(D) Defendants alleged use of a compensation system that did pay some measure of overtime wages upon a designated hourly rate but failed to pay any overtime wages on the additional and substantial portion of the earnings of the installers that were paid by the defendants on a piece rate basis; and

(E) Defendants allegedly falsely listing certain "overtime hours" and "overtime compensation" on installers' pay stubs, such listings being inaccurate in terms of hours actually worked and not reflecting any attempt to pay time and one-half the employees' "regular rate" as required by the FLSA, such purported "overtime" payments   being based upon untrue "regular rates".

The court finds that "the truth of [defendants' 9th and 11th affirmative defenses] can only be assessed by examination" of communications demonstrating defendants' knowledge of the legalities of its alleged actions and of its obligations relating thereto under the FLSA, and that the "at issue" exception applies to these communications outlined above only. *See In re: Kidder Peabody Sec. Litig*., 168 F.R.D. at 470; *Bilzerian*, 962 F.2d at 1292. The court finds that fairness requires disclosure of the content of these communications.  *Kaiser Found. Health Plan, Inc.*, 552 F.3d at 1042.  As the court is limiting the discovery sought regarding the attorney-client communications, and recognizes defense counsel's interest in maintaining the confidential nature of attorney-client communications, the court finds that entering sanctions is not appropriate.

Accordingly, and for good cause shown,

IT IS HEREBY ORDERED that Plaintiff's Motion To Find Defendants in Violation of Order (#63) is GRANTED in part and DENIED in part, as discussed above.

IT IS THEREFORE ORDERED that within ten (10) days from the date of this order, defendants must provide to plaintiff the names, addresses, telephone numbers, and email addresses of all *commercial* cable, internet, or telephone service installers who were employed by MC Communications, Inc. in Las Vegas, Nevada who performed such work after February 11, 2008, and who were paid on a piece rate or point system basis.  Counsel for plaintiff will have ten (10) days from receipt of the names and addresses of the putative class members in which to circulate the notice by first class mail and email to the proposed class members at Plaintiff's counsel's expense.   Counsel for plaintiff will use the form of notice plaintiff attached to his motion for circulation of notice of the pendency of this action pursuant to 29 U.S.C. § 216(b) and for other relief (Doc. #12), with the following revisions:

a. change the opt in period to **60 days**,

b. advise potential plaintiffs that by joining the action they may have to participate in discovery, including written discovery, a deposition, and/or testify at trial, and

c. fix the typographical errors identified in the court's August 1, 2011, Order (#35).

IT IS FURTHER ORDERED that plaintiff's request for sanctions is DENIED.

IT IS FURTHER ORDERED that defendants' Motion To Compel Proper Discovery Responses (#64) is GRANTED in part and DENIED in part, as discussed above.

IT IS THEREFORE ORDERED that plaintiff must provide defendants the engagement letter between plaintiff and plaintiff's counsel on or before July 29, 2013.  The engagement letter may be appropriately redacted as discussed during the hearing and will be subject to a stipulated protective order.   Defendants may serve plaintiff with interrogatories seeking detailed answers as to which attorney performed work on the action, their hourly rate, how many hours they have billed to date, and an estimate of how many hours plaintiff's counsel anticipates billing.

IT IS FURTHER ORDERED that plaintiff's Motion To Compel Production of Documents and Modify Discovery Schedule (#65) is GRANTED in part and DENIED in part, as discussed above.

IT IS THEREFORE ORDERED that, on or before July 29, 2013, defendants must provide the name, last known address, and last known telephone numbers of *all commercial* installers' managers, assistant managers, and supervisors formerly employed by the defendants, such persons have been so employed by the defendants any time after February 11, 2008.

IT IS THEREFORE ORDERED that Discovery is extended one hundred and fifty (150) days from the entry of this order, and is limited in scope to (1) commercial installers, (2) follow-up on documents relating to pay-roll, and (3) the attorney-client issue discussed herein.

IT IS FURTHER ORDERED that plaintiff's Motion To Compel Defendants to Answer at a Deposition Questions Relating to Certain Attorney-Client Communications (#66) is GRANTED in part and DENIED in part, as discussed above.

IT IS THEREFORE ORDERED that plaintiff may serve defendants with interrogatories seeking information regarding communications between defendants and counsel, and may ask (1) if defendants and counsel communicated *prior* to this litigation about the type of conduct that forms the basis for the allegations in the complaint (#7-2), and (2) if so, what was communicated regarding the legalities of and defendants' obligations relating to:

(A) The "piecework no overtime" system described in the complaint (#7-2);

(B) The installers allegedly not being paid time and one-half their "regular hourly rate" for work in excess of 40 hours a week as required by the FLSA based upon the hours they actually worked each week and the total basic "piece rate" they were paid;

(C) Defendants allegedly producing certain false and misleading payroll records indicating that either proper overtime or some measure of overtime was being paid to the plaintiff and those similarly situated when, in fact, no such overtime was being paid;

(D) Defendants alleged use of a compensation system that did pay some measure of overtime wages upon a designated hourly rate but failed to pay any overtime wages on the additional

and substantial portion of the earnings of the installers that were paid by the defendants on a piece rate basis; and

(E) Defendants allegedly falsely listing certain "overtime hours" and "overtime compensation" on installers' pay stubs, such listings being inaccurate in terms of hours actually worked and not reflecting any attempt to pay time and one-half the employees' "regular rate" as required by the FLSA, such purported "overtime" payments   being based upon untrue "regular rates".

DATED this 19th day of July, 2013.

_____
CAM FERENBACH
UNITED STATES MAGISTRATE JUDGE